UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD MARK DRAUGHN, a/k/a
KHALIL MALIK SHABAZZ,

        Plaintiff,        Case No. 2:08-cv-32

v.        Honorable Robert Holmes Bell

PATRICIA CARUSO, et al.,

        Defendants.
_____/

# REPORT AND RECOMMENDATION

Plaintiff Ronald Mark Draughn, a/k/a Khalil Malik Shabazz, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Patricia Caruso, Deputy Director Dennis Straub, Deputy Director Kenneth MacEachern, Deputy Director James MacMeekin, Department Specialist Christopher Chrysler, Warden David Bergh, and Deputy Warden Lloyd Rapelje.

Plaintiff alleges in his complaint that he has been classified to a Maximum Security Facility for the past 13 years despite the fact that his proper security classification screening score him at a Level II, which is considered Medium Security. Plaintiff states that he has never been found guilty of any misconducts for assault, attempted assault, sexual deviance, inciting a riot, escape, or predatory behavior, but has continuously been denied transfer to a lower security facility. Plaintiff alleges that he has a CFA hold on him and is unable to be transferred to a lower security level without the approval of the MDOC Director or one of the Deputy Directors. Plaintiff contends that the CFA Hold List is an arbitrary and unwritten policy used to classify a prisoner to a specific

security level without requisite justification. There is no written policy, procedure or rule authorizing the use of a CFA Hold classification.

Plaintiff alleges that in March of 2005, Defendants Caruso, Straub, MacEachern, MacMeekin and Chrysler continually assigned members of the Nation of Islam, such as plaintiff, to higher levels of security in disparate and discriminatory fashion as compared to other similarly situated prisoners. On June 13, 2005, plaintiff filed a grievance on defendants' decision to deny his transfer to a lower security level. Plaintiff's grievance was denied at each level. Plaintiff also filed a formal complaint with defendant Caruso, but no corrective action was taken. On March 31, 2006, plaintiff was sent a security level screening form, which indicated that he had once again been assigned to Level V security because of his institutional history. Plaintiff claims that defendants' reason for denying plaintiff a reduction in his security level was because of his leadership in the Nation of Islam group and because of his African-American race. Plaintiff contends that black prisoners in the MDOC are held to a higher standard of security classification than are white prisoners, who are routinely granted lower security level placement despite having similar or worse institutional histories. In addition, plaintiff claims that he has not received meaningful review of his security placement for the last 13 years. Plaintiff states that defendants' conduct was motivated by plaintiff's religious affiliation and race and violated his rights under the First and Fourteenth Amendments.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits,

depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that plaintiff's cause of action is barred by res judicata or claim preclusion because plaintiff had a trial on these issues in a previous case which resulted in a jury verdict of no cause of action in January 2007. The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); see *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim

preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions. *Allen v. McCurry*, 449 U.S. 90, 94 ( 1980). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present case. *Allen,* 449 U.S. at 94; *accord Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).[1]

In *Shabazz v. Martin* et al., 2:00-cv-73005, the jury returned a verdict in favor of defendants. In this case, plaintiff names MDOC Director Caruso. Defendant Caruso was substituted as a defendant in the prior case for retiring director Martin. Plaintiff names defendant Straub instead of former MDOC Deputy Director Bolden. Defendant Crysler is named as a classification analyst instead of classification analyst Charles Zamiara and Warden Bergh and Deputy Warden Rapelje are named since plaintiff is housed at Alger Maximum Correctional Facility. Plaintiff was previously housed at the Standish Maximum Correctional Facility. In the opinion of the undersigned, plaintiff has sued the same parties or their privies. This lawsuit was filed within six months of the verdict in the prior case.

Defendants argue that like the previous claims, plaintiff asserts that he was placed on a CFA hold and held in Level V because of his religious beliefs and race. Plaintiff argues in both cases that Nation of Islam prisoners are departed more frequently to Level V than prisoners of other religious beliefs. The only difference between the cases regarding the classification issues is the time period in question. Plaintiff argues that since 2000 he has continually been housed as a Level V

---

[1] The doctrine of collateral estoppel or issue preclusion bars issues of fact or law that were decided and necessary to the judgment in subsequent proceedings, on a different cause of action, against any party to the prior proceeding. *Allen*, 449 U.S. at 94, 101 S.Ct. at 414; *Black*, 15 F.3d at 582.

prisoner for the same reasons. During the January 2007 trial, defendants submitted evidence regarding plaintiff's Level V security classification through 2005.

Plaintiff argues that defendants have not shown that the issues presented in this case are identical to the issues presented in the previous case. Plaintiff asserts that the issues are not identical. Plaintiff claims that the prior case involved only one classification decision which occurred in 1998. However, there is no doubt that plaintiff could have attempted to bring claims, by either asserting them in his original complaint or amending his complaint prior to trial, that occurred regarding his classification prior to the 2007 trial. Contrary to plaintiff's argument, plaintiff may not raise new claims in a new lawsuit arising out of the same facts of his previous failed lawsuit. Plaintiff had the opportunity to raise these claims as part of his 2007 trial. Accordingly, in the opinion of the undersigned, plaintiff may not re-litigate issues decided against him in his previous lawsuit by asserting different claims that he could have brought in his prior lawsuit.

Plaintiff should be barred from asserting any claims involving his security classification that occurred prior to the January 2007 trial. Such a ruling would allow plaintiff to bring claims that accrued after the January 2007 trial, if those claims or issues involved different factual issues that were not actually litigated that would not be barred under the doctrine of collateral estoppel or issue preclusion.[2] In the opinion of the undersigned, upon review of the pleadings in both cases, it does not appear that plaintiff is raising any new issues in this case that could have arose after his January 2007 trial in his prior case.

---

[2]Plaintiff asserts that the complaint in the original action is necessary to decide this motion and that he should be allowed to discover that complaint. First, the complaint was plaintiff's not defendants. Second, the complaint is a public document that would be available to plaintiff from the court where it was filed. Third, while the complaint may be relevant, it is not essential to decide this motion because defendants have submitted sufficient documentation to support their motion. Fourth, the complaint is available for this court to review by electronic access and I have reviewed the complaint in *Shabazz v. Martin* et al., 2:00-cv-73005.

Additionally, defendant James MacMeekin moves for summary judgment based upon lack of personal involvement and qualified immunity grounds. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). Defendant MacMeekin explains that between March 2005 through January 8, 2008 he was a Regional Prison Administrator at Correctional Facilities Administration Region I Office in Kincheloe, Michigan. Defendant MacMeekin was the Assistant Deputy Warden of Housing and Custody at the Baraga Maxium Correctional Facility in 1994, when plaintiff transferred to Baraga from Jackson State Prison after it was determined that plaintiff was the suspected leader responsible for the stabbing of a prison staff member and organizing a disturbance. Plaintiff denies that he was transferred to Baraga for these reasons and further claims that although prison officials continue to assert this as the reason for his security classification, the incident in Jackson never happened. It was this incident that lead to plaintiff's level V status. Defendant MacMeekin indicates that there exists no specific time line of good behavior to justify a reduction in custody level. Rather custody level determinations are made based upon security needs of both the prisoner and the institution based upon the prisoner's behavior as observed by staff and other prisoners. Defendant MacMeekin indicates that he did not participate in classification reviews concerning plaintiff. He further indicates that plaintiff's custody level was reduced to a level IV in June 2009. Plaintiff states that defendant MacMeekin was actively involved in plaintiff's classification reviews from 2005 until 2008. In the opinion of the undersigned, plaintiff has not showed that defendant MacMeekin was personally involved in plaintiff's security

classification reviews. For these reasons, defendant MacMeekin is also entitled to qualified immunity from liability.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment. Accordingly, it is recommended that defendants' motions for summary judgment (Docket #54 and #72) be granted and

this case be dismissed in its entirety. It is further recommended that the court deny plantiff's motion for a temporary restraining order (Docket #89)[3].

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

   /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 2, 2010

---

[3]Plaintiff has not established that his request for injunctive relief has anything to do with the underlying facts of this case. Plaintiff claims that his institutional bank account was frozen.